# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  1:17-cv-00372 – STV

STEPHEN CENTOFANTI

    Plaintiff,

v.

BRIAN EVANS, an individual
TACTICAL ADVANTAGE, INC., a Wyoming corp.
RAYMOND MEZE DAVOUDI, an individual
MOMENTUM FOUNDATION, a Tennessee corp.
XP SERVICES, INC., a Tennessee corp.
COASTAL DEFENSE, INC., a Pennsylvania corp.

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANT DAVOUDI'S
## MOTION TO DISMISS

Plaintiff Stephen Centofanti, through counsel of record Feldman & Wertz, LLP, respectfully submits the following *Response* to Defendant Raymond Meze Davoudi's Motion to Dismiss stating as follows:

Defendant Davoudi filed a F.R.C.P. Rule 12(b)(6) motion to dismiss all of Plaintiff's claims against him based on the sole argument that he was a "passenger" and since the Complaint has not alleged that Davoudi was actually piloting the Experimental Class Vodochody fighter trainer jet, Davoudi had no control over the jet and therefore cannot be liable for Plaintiffs claims for negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Strict Liability.  Davoudi's Motion to Dismiss fails and must be denied as it is not a prerequisite that Davoudi was piloting the jet to establish joint enterprise liability as

pled repeatedly throughout the Complaint.  Colorado substantive law on this subject has been consistent for decades in refusing to strictly construe what constitutes "control" of a vehicle, instead focusing on a fact-sensitive analysis of the events at issue. The claims against Davoudi, as pled throughout the Complaint, presents a clear-cut instance of joint enterprise liability when compared to reported cases in Colorado finding joint enterprise liability.

## LEGAL STANDARD OF REVIEW

Plaintiff generally agrees with the legal standard as set forth in Davoudi's Motion to Dismiss. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## FACTS

The Complaint is consistent throughout that Davoudi was participant in the decision to fly the jet at high speed a mere 100 feet off the ground through DeBeque Canyon.  Davoudi was not a passenger in the jet, such as a commercial air traveler sitting in coach with no communication much less control over the airplane.  This is an Experimental class two-seat fighter jet with controls for the aircraft in both cockpits and Davoudi was sitting directly behind Evans.  Moreover, there is no such thing as a "passenger" in an Experimental classed fighter jet and the Federal Aviation Administration states as much in its regulations as stated specifically in the Complaint.  Defendants Evans (the pilot) and his corporation Tactical Advantage, Inc. directly cite to the applicable Federal Regulation - 14 CFR §91.313 - in their Answer (Paragraph 16) and that regulation states:

> "No person may be carried on a restricted category civil aircraft unless that person -
> **(1)** Is a flight crewmember;

2

      **(2)** Is a flight crewmember trainee;
      **(3)** Performs an essential function in connection with a special purpose operation for which the aircraft is certificated; or
      **(4)** Is necessary to accomplish the work activity directly associated with that special purpose."

The claims for relief pled against Davoudi – First, Third, Fourth and Fifth all are consistent in their allegations that pilot Evans and Davoudi jointly decided to take that abnormally dangerous route through DeBeque Canyon.

## ARGUMENT

The sole argument presented by Davoudi in his Motion to Dismiss is that there is no legal duty imposed on an airplane passenger to protect "bystanders" from the operation of an airplane by the pilot. First and foremost, it strains credulity to even suggest, much less argue, that Plaintiff Centofanti was a "bystander" that day in DeBeque Canyon. As set forth in the Complaint, Centofanti was driving to Grand Junction with his friends on Interstate 70. A "bystander" is a non-participating person present at an event – an onlooker. Centofanti of course had absolutely no advance notice that he would be front row center to Evans and Davoudi's 300 mph, 100 feet off the ground air show.

Davoudi's argument is specific. He argues that since he was not a pilot and he was not piloting the jet that day, he cannot be held liable for Centofanti's damages. A Federal Court in diversity jurisdiction cases applies state substantive law. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427, (1996). Colorado state law has been consistent for decades in holding that actual control of a vehicle is not a legal prerequisite for joint venture liability.

By far the majority of cases in Colorado addressing joint venture liability concern automobiles. In fact, no case has been found nationwide that specifically addresses joint venture

liability of the second person in a two-seat fighter trainer jet.  However, the legal theory concerning joint venture liability is applicable regardless of the type of vehicle involved.

For joint venture to exist in Colorado two elements have to be met: (1) two or more persons must unite in pursuit of a common purpose and (2) each person must have a right to control the operation of the vehicle in question.  See, Mayer v. Sampson, 402 P.2d 185 (1965).

Davoudi's argument distinctly focusses on the second element in that he argues since he did not pilot the jet, he did not "control" the jet therefore he cannot be held liable.  That argument has been negated consistently by Colorado courts. First, in Spillane v. Wright, 259 P.2d 1078 (1953) the Colorado Supreme Court found control existed among several parties involved in the loading and driving of a truck despite arguments made that each defendant was separate and distinct.  The court based joint venture liability on the common purpose engaged in by all defendants.

Second, in 1954, the Colorado Supreme Court in Moore v. Skiles, 274 P.2d 311 (1954) found joint venture liability between co-owners of an automobile holding, "We, however, believe that the more reasonable and common sense view is that the owner or joint owner, riding as an occupant in his own car, using the car for a purpose in common with the driver is presumed to have a right to control the driver and a right to manage and direct the movements of the car. Whether the husband's driving of the vehicle was at the husband's or wife's request, or by agreement between them, or by his assuming the wheel and she silently acquiescing, makes no difference. Moore v. Skiles, 130 Colo. 191, 200, 274 P.2d 311, 315 (1954) overruled on other grounds by Watson v. Reg'l Transp. Dist., 762 P.2d 133 (Colo. 1988)

Third, in Lasnetske v. Parres, 365 P.2d 250, 254 (1961), the Colorado Supreme Court was even more specific in holding that the right to control a vehicle is not dependent on actually

4

driving the vehicle: "The right to exercise control is not dependent upon the ability of the passenger to actually drive the vehicle. It is not contemplated that a co-owning passenger in exercising his right to control will physically wrest the wheel from the driver. Rather, verbal admonition, suggestions, or even outright commands are the usual methods whereby the co-owning passenger exercises his right to control. It is a well-known fact that some of the better 'back seat' drivers are those who know little, or nothing, about the actual driving of the vehicle, but can nonetheless still offer friendly advice, if not flat commands, to the driver." Lasnetske v. Parres, 365 P.2d 250, 254 (1961)

Fourth, four years later in 1965, the Colorado Supreme Court in Mayer v. Sampson, 157 402 P.2d 185 (1965) affirmed the denial of a motion to dismiss seeking to dismiss claims for negligence made against a passenger in an automobile. The Supreme Court found a "common purpose" between two friends driving back to Denver from a ski trip holding, "The facts here disclose that Patton and Mayer were engaged in a joint enterprise. A joint enterprise exists where the participants are engaged in the joint prosecution of a common purpose, each having authority to act for all and each controlling the movements of the undertaking in some part." Mayer v. Sampson, 402 P.2d 185, 188 (1965).

Fifth, in Bilsten v. Porter, 516 P.2d 656, 658 (Colo.App.1973) the Court held that, "The right to control necessary for the existence of a joint venture is a right existing between the parties to the joint venture by virtue of their express or implied agreement." Joint venture liability in Bilstein was found against a passenger in an automobile who not only was not driving, but also lacked a driver's license.

Moving forward to most recently, in 2015 the Colorado Court of Appeals examined the joint venture liability of a car dealership during a test drive by a prospective purchaser in Am.

Family Mut. Ins. Co. v. AN/CF Acquisition Corp., 361 P.3d 1098 (Colo.App. 2015). The Court in this case first held that "Colorado courts have applied the joint venture doctrine to hold defendant passengers vicariously liable for drivers' negligence in a line of cases dating back nearly a century." Id at 1099. The Court further held that "The district court concluded that Go Courtesy Ford's salesman "exercised the right to control the operation of the vehicle by telling Ms. Hart where to turn and directing her where she would be driving. We agree with the district court's conclusion. Go Courtesy Ford had a right to control the operation of the car because it owned the car and its salesman accompanied Hart as a passenger." Id at 1103. The impact of the Am Family ruling is that actual physical control over the operation of a vehicle is not required for joint venture liability.

Although the cases cited within all relate to the operation of an automobile, there should be no distinction drawn with any other vehicle. Finding joint venture liability rests on control and common purpose and such are applicable to any type of vehicle.

In the case at bar, it is at the very least a factual matter as to what extent Davoudi participated in the decision to fly through DeBeque Canyon in such a matter. Did Davoudi have any knowledge of the flight plan taken that day? Was he held hostage by Evans or did he acquiesce and agree to the route? Within the context of a F.R.C.P. Rule 12(b)(6) motion, all allegations set forth in the Complaint, to the extent they are not conclusory, must be taken as true. In the Complaint, Centofanti alleges that Davoudi participated in the decision to fly through DeBeque Canyon. Davoudi's Motion to Dismiss does not refute that allegation in any manner whatsoever and such silence leads to the reasonable conclusion that Davoudi knew exactly what the flight plan was going to be. Davoudi's rests solely on the legal argument that Davoudi was a "passenger," which is legally incorrect as a matter of Federal rule and otherwise not relevant to

the determination of joint venture liability. Also, that Davoudi lacked control over the jet since he was not a pilot, which, again, is insufficient to avoid liability as argued herein. It simply does not matter even if Davoudi was a passenger; if he had knowledge of or participated or acquiesced in the decision to fly through DeBeque Canyon that day at an altitude of 100 feet at 300 mph, he is exposed to liability for Centofanti's damages as he and Evans were engaged in a common purpose.

Finally, Davoudi's recitation to the Code of Federal Regulations is not relevant. Davoudi's duties of care to Centofanti under common law negligence, emotional distress and strict liability claims are not preempted by any Federal law and Centofanti's negligence *per se* claim was filed solely against pilot Evans.

WHEREFORE, Plaintiff Centofanti respectfully requests that this Court deny Defendant Raymond Meze Davoudi's Motion to Dismiss.

Date:   April 13, 2017

        Respectfully Submitted:

        Feldman & Wertz, LLP

        S/Alan Feldman
By: _____
        Feldman & Wertz, LLP
        215 S. Monarch St, Suite 303
        Aspen, CO 81611
        Tel: 970-925-1025
        Fax: 970-925-9398
        alan@aspen-law.com

        *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

   I certify that on April 13, 2017, a true and correct copy of the foregoing Response to Motion to Dismiss was served on all parties of record in this civil action through the CM/ECF electronic filing system.

             S/Alan Feldman
             _____